1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9
10
11

DONNA McCALLUM,

                 Plaintiff,

12

     v.

13

GRAYS HARBOR COUNTY, WES
CORMIER, FRANK GORDON, and
VICKI RAINES,

14
15

              Defendants.

CASE NO. 3:16-cv-05609-RJB

ORDER ON DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

16
17

     THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment

18

Dkt. 17. The Court has considered Plaintiff's Response (Dkt. 20), Defendants' Reply (Dkt. 21),

19

and the remainder of the file herein.

20

<u>RELEVANT FACTS</u>

21

     The facts herein are recited in favor of Plaintiff, the nonmoving party, and supported by

22

the record.

23

     Beginning in October 2003, Plaintiff Donna McCallum worked as Clerk for the Grays

24

Harbor County Board of Commissioners. An Employee Agreement signed by both Ms.

McCallum and Grays Harbor County gave the County the prerogative to terminate Ms. McCallum's employment without cause, with 30 days' notice, or with cause, with no notice. Dkt. 20-1 at 12, 13. The agreement defined "cause" as, *inter alia*, an "act or failure to act which, in the judgment of the Board . . . is sufficient to show the Administrative Assistant to be an unsuitable and unfit person[.]" *Id*. at 13. Under the terms of the Employment Agreement, "prior to any decision to terminate [for cause]. . . the County will hold an informal due process meeting[,]" also referred to as a *Loudermill* hearing, wherein the County must give the employee (1) notice of the allegations, (2) an explanation of the evidence in support of the allegations, and (3) an opportunity to provide the employee's side of the story. *Id*. at 13, 14 (emphasis added).

The County terminated Ms. McCallum during January of 2015 under the leadership of three elected commissioners, Wesley Cormier, Frank Gordon, and Vickie Raines, who together constituted the Grays Harbor County Board of Commissioners. Preceded by another commissioner, Herb Welch, Commissioner Raines was elected during Fall of 2014 and began her term on January 1, 2015. According to County employees, Ms. McCallum expressed dislike for Commissioner Raines during Fall of 2014, which Ms. McCallum denies. Dkt. 18 at 71, 80.

On December 2, 2014, for reasons unclear in the record, the County initiated severance package negotiations with Ms. McCallum. Dkt. 20-1 at 39. When negotiating the terms of the severance agreement, Ms. McCallum did not "fill out FMLA paperwork" because she "was not offered any." *Id*. at 38, 72, 73. Ms. McCallum discussed separation terms with HR Manager Marilyn Lewis, who recalls that Ms. McCallum wanted three months' severance, all vacation paid out, and the word "terminate" to not appear anywhere in the agreement. *Id*. at 67. The proposed severance agreement specified December 31, 2014 as Ms. McCallum's last day of work and gave Ms. McCallum twenty-one (21) days to review, sign, and return the agreement.

1    Ms. McCallum underwent retinal vascular surgery on December 14, 2014. Dkt. 20-1 at

2    30. Prior to surgery, she verbally informed all three then-commissioners individually and "at a

3    public meeting" that she planned to return to work after surgery recovery, which she expected to

4    take four to six weeks. *Id*. at 26, 27, 43. Ms. McCallum expected to return mid-to-late January,

5    but concedes that she did not inform the commissioners of a date certain for her return. *Id*. Ms.

6    McCallum advised all three commissioners individually that she wanted to stay on with the

7    County as Clerk to the Board. *Id*. at 28.

8        On December 26, 2014, Ms. McCallum's husband, Daryl McCallum, emailed to the

9    County documentation of "Donna's return to work status from her surgeon." Dkt. 18 at 100. The

10   email requested that the commissioners be informed of her status and attached a signed note on

11   letterhead from a doctor stating that Ms. McCallum "may return to school or work on 1/12/15"

12   and that "patient has limited depth perception due to recent eye surgery." *Id*. at 101. Ms.

13   McCallum did not initially provide the Board with a doctor's note vouching for her absence post-

14   surgery because, in her experience, "there was none required." Dkt. 20-1 at 30, 31.

15       On December 31, 2014, the Board of Commissioners held a session that included

16   discussion of the severance agreement, which the Board approved. According to the meeting

17   minutes:

18       Commissioner Gordon made a motion, with Commissioner Welch seconding . . . to
         approve a severance package agreement with Donna McCallum with the understanding
19       that she wants to end her employment under the terms of this agreement.

20   Dkt. 20-1 at 41. Later that day, the County's attorney emailed Ms. McCallum's attorney. Dkt. 18

21   at 98. The subject line to the email reads, "DONNA McCALLUM-SEPARATION RELEASE

22   (Execution)." *Id*. The email states:

23       . . . The Commissioners approved the attached [separation agreement] with the
         understanding that Donna would like to end her employment with the County under these
24

terms and conditions. I have an executed copy being held until we have Donna's signature—at which time I will release the County Commissioners' signatures to you.

I understand that Donna has 21 days to consider this agreement—and may end up not signing it. She is scheduled to report . . . on January 12 so it would be good to have this resolved by then . . . She remains employed by the County until she signs this agreement or until the parties make another decision.

*Id.* (emphasis added). Ms. McCallum did not sign the separation agreement. Ms. McCallum did

not report to work on January 12, 2015.

On January 14, 2015, the Board of Commissioners held a special session, with all three

commissioners present, "to discuss the performance of a public employee." Dkt. 20-1 at 7.

According to meeting minutes:

A motion was made, seconded and passed by all Commissioners to revoke the severance agreement with Donna McCallum.

A motion was made by Commissioner Raines and seconded by Commissioner Cormier to terminate Donna McCallum, Clerk of the Board, with cause for job abandonment and violating Section G of her employment agreement, inability to work with the commissioners and vocalizing to staff her unwillingness to work for a specific Commissioner. Commissioner Gordon voted against the motion . . . stat[ing] he would rather terminate without cause, but agrees Ms. McCallum did not act appropriately [and] has been a good employee of the County for 11 years.

*Id.*

On January 15, 2015, Commissioner Cormier on behalf of the County notified Ms.

McCallum in writing that the commissioners had voted to revoke the severance agreement and

"to consider termination of your employment for cause[.] Dkt. 18 at 107. The "cause" for

termination, according to the letter, was stated:

According to the documentation we received from your husband on December 16, 2014, you were to report to work on January 12, 2015, which you failed to do. You also failed to call in to report the absence and request additional time off. You have been absent for four days without calling in and without authorization . . . in violation of County policy and your Employment Agreement[.]

Additionally, you have voiced to many people in the County that you will not work with the new commissioner, Vickie Raines. Your refusal to work with [her] is tantamount to insubordination and it also makes you unfit and unsuitable . . . The position of the Clerk to the County Board serves the entire Board and your statements . . . are inconsistent with this requirement.

I [Commissioner Cormier] would like to meet with you and [HR Manager] Marilyn Lewis on Tuesday, January 20, 2015 . . . You will have an opportunity to present any information you would like us to consider prior to making our final decision.

*Id.*

On January 20, 2015, Ms. McCallum attended the *Loudermill* hearing, along with Commissioner Cormier, HR Manager Lewis, and an attorney for the County. Ms. McCallum provided to the County a second doctor's note, which stated that Ms. McCallum "[m]ay not return to work on: 1/12/15-1/21/15" but "[m]ay return to work on: 1/22/15." Dkt. 20-1 at 9; Dkt. 18 at 109. The note also added: "Remarks/limitations: Active floaters from eye surgery, causing visual disturbances." *Id.* The *Loudermill* hearing was "very short," and Ms. McCallum took the meeting as a chance to remind the County that she had notified everyone that she would be out for four to six weeks; she had been available by phone; and she had never verbalized an unwillingness to work with Commissioner Raines. *Id.* at 45.

On January 21, 2015, the Board of Commissioners held a special session "to consider three items," the second of which related to Ms. McCallum. According to the meeting minutes:

2. Executive Session—At 4:20 p.m. Commissioner Cormier moved the meeting into Executive Session . . . to consider the performance of a County Employee . . . At 4:30 p.m. the Commissioners moved back into open special session. A motion was made by Commissioner Cormier and seconded by Commissioner Raines to uphold the decision to terminate Donna McCallum with cause, after consideration of the information provided during the loudermill hearing. Commissioner Gordon voted against the motion. Commissioner Raines noted the cause is due to job abandonment and violating Section G of the employment agreement, inability to work with the commissioners, vocalizing to staff her unwillingness to work for a specific commissioner.

Dkt. 20-1 at 22.

Also at the January 21, 2015 the meeting, the Board appointed Jenna Amsbury to replace Ms. McCallum as Clerk of the Board. Prior to surgery, Ms. McCallum had arranged for Ms. Amsbury, the deputy clerk, to cover the Clerk for the Board responsibilities in Ms. McCallum's absence. Ms. Amsbury was significantly younger in age, whereas Ms. McCallum was approximately age sixty-two. Commissioner Gordon admits that at one point he "could have" said to Ms. McCallum "that [Commissioner] Cormier didn't like taking direction from older women," a comment that "was more in jest than anything else." Dkt. 20-1 at 47, 56.  Ms. McCallum did not report age-related comments by Commissioner Gordon or Commissioner Cormier, but she reports that these comments began during 2013, when Commissioner Cormier started, and occurred "continually . . . over the period of time that Mr. Cormier was working in the office." Dkt. 18 at 33, 38.

Prior to the January 14, 2015 and January 21, 2015 Board meetings, Ms. Amsbury, acting on behalf of the Board as Clerk, sent email notice of the meetings to various individuals, including Ms. McCallum, more than 24 hours in advance of each meeting. Dkt. 18 at 131, 133. Included in the email recipients were two individuals responsible for posting the special meeting agendas to the County website. *Id*. at 78, 79.

In a January 21, 2015 letter to Ms. McCallum from Commissioner Cormier on behalf of the County, the commissioner states that "we have considered the information you presented at the meeting and we have made the decision to terminate . . . for cause." Dkt. 18 at 113. The letter, signed by all three commissioners, continues: "your refusal to work with Commissioner Raines and your failure to report to work provides us with a basis for your termination for cause, and in some respects your failure to work is consistent with your refusal to work with Commissioner Raines." *Id*.

Defendants seek summary judgment of dismissal from all claims. The Complaint alleges violations of the Washington Law Against Discrimination, the Americans with Disabilities Act, the Family Medical Leave Act, the Age Discrimination in Employment Act, and the Washington Open Public Meeting Act, as well as Washington common law claims for wrongful discharge, intentional infliction of emotional distress, negligent infliction of emotional distress, and breach of contract. Dkt. 1-1 at 7-9.

<u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

<u>DISCUSSION</u>

Defendants' motion presents the issue of whether, for each discrete claim, there is an issue of material fact to preclude summary judgment.

**1. WLAD claim**

The Complaint alleges two theories for the WLAD violations: failure to reasonably accommodate disability-related limitations, and wrongful discharge on the basis of Plaintiff's medical disability. Dkt. 1-1 at ¶¶44, 45.

    *a. Failure to make reasonable accommodation.*

Reasonable accommodation claims alleged under the WLAD require a showing that (1) the employee had a "disability" as defined by statute, (2) the employee was qualified for the job, (3) the employee gave the employer notice of the disability, and (4) the employer failed to adopt measures to accommodate the disability. *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 145 (2004). Under RCW 46.60.040(7), "disability" is defined as "the presence of a sensory, mental, or physical impairment that: (i) is medically cognizable or diagnosable; or (ii) exists as a record or history; or (iii) is perceived to exist whether or not it exists in fact."

Defendants' briefing primarily points the finger at Plaintiff, arguing that Plaintiff failed to provide the County with adequate information about the nature of her disability and failed to request the accommodation she now claims she was denied. Dkt. 17 at 12, 13. In response, Plaintiff argues that she did, in fact, request the accommodation of additional time off of work while at her January 20, 2015 *Loudermill* hearing, but the County "refused to consider" her second doctor's note. Dkt. 20.

Considering a prima facie case, the record points to issues of material fact about the first element, whether Plaintiff's medical condition constitutes a disability. Doctors' notes describe the limitation as "limit[ing] depth perception" and "causing visual disturbance." Dkt. 18 at 100, 109. Next, although Defendants dispute that Plaintiff was qualified for her job, the second element is satisfied by Commissioner Cormier's testimony that Plaintiff did not have performance issues and HR Manager Lewis' testimony that Plaintiff had never been disciplined prior to December of 2014. Dkt. 20-1 at 52, 65. Considering the third element, notice of the disability, "an employee is not required to tell the employer about the full nature and extent of the disability, only that a disability requiring accommodation exists." *Sommer v. Dep't of Social and Health Services*, 104 Wn.App. 160, 173 (2001). For the same reason as in the FMLA claim, *see below*, the notice requirement is satisfied.

The final element, duty to make reasonable accommodations, focuses on the conduct of the employer. Once notice is given of a disability, the employer must take "positive steps" to help the employee continue working in her existing position or find a new position compatible with the employee's disability. Employers must make good faith efforts to engage in the interactive process. *Frisino v. Seattle School Dist. No.1*, 160 Wn.App 765, 781 (Div. I 2011). Reasonable accommodation "could include . . . adjustment in job duties, work schedules, scope

of work, job setting or conditions of employment[.]" *MacSuga v. Cty. of Spokane*, 97 Wn. App. 435, 440 (1999). Applied here, there are triable issues of fact as to Defendants' efforts in engaging Plaintiff in the interactive process. Defendants arguably should have taken positive steps to give Plaintiff more flexibility in arranging her schedule, for example, by contacting Plaintiff around January 12, 2015 when she failed to appear at work. Alternatively, under the assumption that the County terminated Plaintiff's employment on January 21, 2015 (after the *Loudermill* hearing, as the Employment Agreement required), the County arguably should have allowed for Plaintiff's schedule changes ex post-facto under circumstances where: (1) Plaintiff had worked for the County for more than a decade without disciplinary problems, (2) Plaintiff provided the County with doctor's note explaining her absence from January 12, 2015 to January 21, 2015, (3) Plaintiff had arranged for Ms. Amsbury to cover for much of her absence.

There are issues of material fact for the WLAD claim brought under the reasonable accommodation theory.

### b. *Wrongful discharge based on disability.*

Plaintiff appears to abandon the wrongful discharge theory of liability. *See* Dkt. 20. Plaintiff's Response is devoid of any argument pointing to issues of fact as whether Plaintiff's disability was a substantial factor motivating the termination of Plaintiff's employment. The WLAD claim should be dismissed as to this theory.

Defendants' motion should be denied in part and granted in part as to this claim. Plaintiff should be permitted to proceed on the WLAD reasonable accommodation theory. The claim should otherwise be dismissed.

### 2. Americans with Disabilities Act claim

The Complaint alleges that Plaintiff was terminated due to her disability in violation of the ADA. Dkt. 1-1 at ¶61.

Title II of the ADA prohibits discrimination against a "qualified individual with a disability" 42 U.S.C. § 12131(2). A "disability" is defined as "[a] physical or mental impairment that substantially limits one or more of the major life activities[.]" 28 C.F.R. § 35.108. "Major life activities include, but are not limited to: "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing . . ." *Id.*

Defendants argue that this claim fails because Plaintiff has failed to produce evidence showing substantial limitations to a major life activity, and therefore, there is no showing of a "disability" under the ADA. Dkt. 17 at 10. According to Defendants, although the record shows that Plaintiff was being treated for an eye condition, there is no record about resulting impairments or limitations. *Id.* at 11. The remainder of Defendants' ADA arguments overlap with those made for the WLAD reasonable accommodation claim. *See* Dkt. 17 at 11-13.

Defendants' argument is unconvincing, especially for purposes of summary judgment, because the ability to see is a "major life activity" expressly mentioned in the statute. The doctor's notes, which include both the medical diagnosis and limitation descriptors, are sufficient to defeat summary judgment. Dkt. 18, at 101, 109.

Defendants' motion should be denied as to this claim.

## 3. FMLA claim

The Complaint alleges that Defendants interfered with Plaintiff's FMLA rights by failing to notify Plaintiff of her rights and to grant her leave, despite her eligibility. Dkt. 1-1 at ¶53. The

Complaint also alleges that Defendants discriminated against Plaintiff by terminating her on the basis of her disability in violation of the FMLA. *Id.* at ¶¶54-56.

The Family Medical Leave Act, 29 U.S.C. § 2615(a), created two interrelated, substantive rights: (1) the employee has a right to use certain amounts of leave for protected reasons, and (2) the employee has a right to return to his or her job, or an equivalent job, after using protected leave. *Sanders v. City of Newport,* 657 F.3d 772, 777 (9th Cir.2011). The FMLA places an affirmative burden on an employer to notify employees of their rights under the Act. *Bushfield v. Donahoe,* 912 F.Supp.2d 944, 952 (D.Idaho 2012). Section 2615(a)(2) makes it unlawful for employers to retaliate or discriminate against a person for opposing any violation of their FMLA right to leave. Section 2615(a)(1) makes it unlawful for an employer to "interfere with, restrain or deny" the exercise or attempt to exercise FMLA leave. Although the Complaint appears to allege violations of both §§2615(a)(1) and (a)(2), Plaintiff has apparently abandoned the retaliation or discrimination theory under subsection (a)(2). *See* Dkt. 20 at 10 ("Defendants correctly identify the FMLA cause of action as an interference claim").

When a party alleges a violation of § 2615(a)(1), it is known as an "interference" or "entitlement" claim. *Sanders*, 657 F.3d at 777 (citations omitted). Under § 2615(a)(1), it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" the substantive rights guaranteed by the FMLA. 29 U.S.C. § 2615(a)(1). The Ninth Circuit has declined to apply *McDonnell Douglas* burden shifting to "interference" claims. Instead, "[an employee] can prove this claim, as one might any ordinary statutory claim, by using either direct or circumstantial evidence, or both." *Id.* quoting *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 112, 1119 (9th Cir. 2001). To make a prima facie case, the plaintiff must establish that: (1) she was eligible for FMLA's protections, (2) her employer was covered by the FMLA, (3)

she was entitled to leave under the FMLA, (4) she provided sufficient notice of intent to take leave, and (5) the employer denied her FMLA benefits. *Id*. at 778. The employer's intent is irrelevant to a determination of liability in an interference claim. *Id*.

For purposes of this motion, Defendants concede that Plaintiff qualified for FMLA leave. Dk. 17 at 8. Therefore, the Court focuses its analysis on the fourth element, whether Plaintiff provided notice of intent to take FMLA leave. According to Defendants, Plaintiff affirmatively declined to use FMLA leave when choosing her sick leave, clearly revealed by her deposition testimony: "[t]here was no reason to [take FMLA leave]. It was just a normal—I had sick leave on the books . . . so I was using my sick leave." *Id*. Plaintiff argues that she did not need to expressly invoke FMLA, but rather only need show that she informed the County of the nature of her illness (serious eye condition) and the likely duration of her absence (four to six weeks). Dkt. 20 at 12, 13.

The FMLA defines the notice requirements for foreseeable FMLA leave. By statute:

An employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave. . . When an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA . . . The employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken.

29 C.F.R. § 824.302(c).

Applied here—and construing the facts in Plaintiff's favor—Plaintiff provided sufficient notice to the County of the nature of her medical condition and the approximate timeframe of her expected absence. As an initial matter, the Court notes that the termination date may reasonably be contested. Assuming that the County terminated Plaintiff on January 21, 2015, the County was in receipt of two doctor's notes, both of which detailed Plaintiff's medical condition and

physical limitations and the expected timing and duration of absence, from December 26, 2014 until January 22, 2015. Dkt. 18 at 101, 109. The first note, emailed to HR Manager Lewis on December 26, 2014, gave Plaintiff medical clearance to return to work on January 12, 2015. *Id*. The second note, presented by Plaintiff to Commissioner Cormier and HR Manager Lewis at the January 20, 2015, *Loudermill* hearing, gave Plaintiff permission to return to work on January 22, 2015. Dkt. 18 at 109. The two notes, also supported by Plaintiff's testimony about what she verbally told the commissioners, is sufficient information to create an issue of material fact as to the notice of intent element.

Defendants make much of the fact that Plaintiff affirmatively chose to use sick leave, arguing using sick leave showed an intent to decline FMLA leave. However, "affirmatively declining the present exercise of a right in order to preserve it for the future is fundamentally different from permanently relinquishing that right." *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1244 (9th Cir. 2014). There is at the very least an issue of fact as to whether Plaintiff used her sick leave with the intent to permanently relinquish her right to FMLA leave.

Defendants' motion should be denied as to this claim.

**4. Age Discrimination in Employment Act (ADEA) claim**

The Complaint alleges that "in direct violation of the ADEA, the Defendant engaged in age discriminatory acts" that harmed Plaintiff. Dkt. 1-1 at ¶66.

The ADEA makes it unlawful to "discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a). ADEA claims are analyzed with the three-stage burden shifting framework of *McDonnell Douglas*. If the plaintiff can establish a prima facie case, the burden shifts to the employer to show a legitimate, non-discriminatory reason for termination. If the employer satisfies this burden, the burden shifts back to the employee to show pretext. *Diaz*

*v. Eagle Produce Ltd. Partnership*, 521 F.3d 1201, 1208 (9t Cir. 2008). To establish a prima facie case of age discrimination, the plaintiff must show that she was (1) at least forty years old, (2) performing the job satisfactorily, (3) discharged, and (4) replaced by a substantially younger employer with equal or inferior qualifications. *Id*. Pretext may be shown by direct evidence or indirect evidence, where the "proffered explanation is unworthy of credence." *Id*. at 1212.

Defendants argue that there is no direct or circumstantial evidence of age-based discrimination. Dkt. 17 at 18. According to Defendants, the only age-related comment supported by the record is that, per Commissioner Gordon, Commissioner Cormier commented that he "did not like older women such as [Plaintiff] giving him advice,'" but, Defendants contend, that comment was made in jest, at an unidentified time, and was a "stray remark[.]" *Id*. at 19.

Plaintiff points to the same remark as evidence of age discrimination sufficient to overcome summary judgment, under circumstances where Commissioner Gordon had otherwise commended Plaintiff for her job performance. Dkt. 20 at 15, 16.

Beginning with the prima facie case, the record supports—and Defendants do not contest—three of the four elements. Plaintiff is at least forty years old, Plaintiff was discharged, and Plaintiff was replaced by a person arguably of equal or inferior qualifications. Dkt. 17 at 18 FN15. Defendants contest the second element, satisfactory job performance. Defendants argue that (1) Plaintiff abandoned her job, when she failed to return to work on January 12, 2015 without notifying anyone of her date change, and (2) Plaintiff was unfit to work, given comments about unwillingness to work with Commissioner Raines. *Id*. However, the record also shows that Plaintiff received positive work performance reviews. Dkt. 20-1 at 52, 65. Along with the other elements, the second element is therefore satisfied for prima facie purposes.

Next, the Court turns to Defendants' burden to show a legitimate, non-discriminatory reason for termination, a burden Defendants have met. In two letters to Plaintiff, signed by all three commissioners, the County cites several reasons for termination, which is a sufficient showing. Dkt. 18 at 107, 113.

Finally, the Court considers whether Plaintiff has made a showing of pretext, which she has done. Central to this showing are the alleged statements by Commissioner Cormier about Plaintiff's age, which he unsurprisingly denies making. Dkt. 18 at 52. Commissioner Gordon's deposition points to the contrary:

> Q: Did you [Commissioner Gordon] ever tell Donna [McCallum] that Wes Cormier didn't like taking direction from older women?
>
> A: You know, I could have said something like that when Wes was first in there. Both Wes and I—Donna is a very strong-willed person, you know, and my age and then Wes is also like that, so sometimes when—when maybe we was told that we was doing something—something wrong—it kind of made you uncomfortable. But I think if I said something like that, it was more in jest than anything else.
> . . .
> Q: Ok. Do you think Donna [McCallum] may have taken it seriously?
>
> A: Could have, yes.

Dkt. 18 at 93.

Plaintiff's deposition testimony reinforces the factual showing of Commissioner Gordon's testimony. According to Plaintiff, "Mr. Gordon . . . told [Plaintiff] on several occasions that he thought Mr. Cormier had an age bias" and "did not like an older woman like [Plaintiff] giving him advice." Dkt. 18 at 35, 36. Per Plaintiff, these comments started when Commissioner Cormier begun his tenure as a commissioner during 2013 and occurred "continually . . . over the period of time that Mr. Cormier was working in the office." *Id*. at 33, 38. During 2014, another employee, HR Manager Marilyn Lewis, informed Plaintiff that Commissioner Cormier "want[ed] [her] gone," for unspecified reasons. *Id*. at 38. HR Manager Lewis later personally

negotiated the Severance Agreement, which, although later revoked, would have awarded Plaintiff early retirement. Plaintiff has made a showing of an issue of material fact as to pretext.

Defendants' motion should be denied as to this claim.

**5. Washington Open Public Meeting Act (OPMA) claim**

The Complaint alleges that Defendants violated the OPMA by failing to provide adequate notice for special meetings and taking unauthorized action in executive sessions. Dkt. 1-1 at ¶69.

The OPMA provides that "[a]ll meetings of the governing body of a public agency shall be open and public and all persons shall be permitted to attend any meeting of the governing body of a public agency, except as otherwise provided in this chapter." RCW 42.30.030. Failure to comply can result in civil penalties. RCW 42.30.120. *Wood v. Battle Ground Sch. Dist.*, 107 Wn. App. 550, 558 (2001). The plaintiff must show (1) that a member of a governing body (2) attended a meeting of that body (3) where action was taken in violation of the OPMA, and that (4) the member had knowledge that the meeting violated the OPMA. *Wood v. Battle Ground School Dist.*, 107 Wn.App. 550, 559 (2001); RCW 42.30.030. Under the OPMA, "special meetings," require at least twenty-four hours "notice," with notification of the time and place (a) delivered to each local newspaper and local radio or television station, (b) posted on the government agency's website, and (c) prominently displayed at the main entrance of the agency's principal location. RCW 42.30.080(b).

Defendants argue that the undisputed record shows notice of at least twenty-four hours for both special sessions, and that the commissioners' actions to rescind the separation agreement and terminate Ms. McCallum's employment for cause were done in an open and public manner. Dkt. 17 at 23, 24.

1      In support of Plaintiff's theory that two special sessions were held in violation of the

2  OPMA without proper notice, Plaintiff argues that the special meeting notices insufficient as

3  untimely. Although Plaintiff concedes that she appears on the list of recipients in Ms. Amsbury's

4  emails, Plaintiff maintains that she "did not get the email blast and, despite checking the website

5  for posting, never saw timely notice of the meetings." Dkt. 20 at 17. In support of Plaintiff's

6  second theory, that the commissioners violated the OPMA by taking actions not open and public,

7  Plaintiff argues, without citing to the record, that "[Commissioner] Raines clearly went to each

8  of the sitting Commissioners and discussed votes and decision that should have taken place at a

9  public meeting. . . [Thus Commissioner] Raines' private meetings . . . rises to the level of a

10  violation." Dkt. 20 at 16, 17.

11      The record does not support either of Plaintiff's theories. Although Plaintiff states that

12  she did not receive notice via email of the meetings, the testimony of Ms. Amsbury and chain of

13  email correspondence about public posting of the notice undermines Plaintiff's naked assertion.

14  Dkt. 18 at 78, 79, 81-83, 136, 138. In fact, the email correspondence shows direct notification to

15  Plaintiff of both special sessions, without any credible explanation of why Plaintiff did not

16  receive notice. Ms. Amsbury's email notice, sent more than twenty-four hours before each

17  meeting, also included as recipients the IT staff responsible for posting the content on the

18  County's website. *Id.* Without offering any credible alternative explanation, Plaintiff's self-

19  serving assertion, without more, does not create an issue of material fact on this claim.

20      The second theory fails because the Court cannot discern, and Plaintiff offers no

21  explanation or citation to the record, of what actions were taken outside of open and public

22  sessions. Plaintiff states that Commissioner Raines talked to other commissioners about

23  unspecified topics to be voted upon without support in the record. Further, even if there was a

24

showing that the commissioners took action outside of an open and public forum, there is no showing—either direct or circumstantial—of the "knowledge" element, which must show that Commissioner Raines knew that actions taken were improper.

Defendants' motion should be granted as to this claim, which should be dismissed.

**6. Common law claims**

    *a. Wrongful Discharge in Violation of Public Policy*

The Complaint alleges that Plaintiff's disability was a substantial factor in Defendants' decision to terminate her, which constitutes wrongful discharge in violation of public policy. Dkt. 1-1 at ¶46.

The tort of wrongful discharge in violation of public policy is a narrow exception to Washington's employment-at-will doctrine. *Sedlacek v. Hillis,* 145 Wn.2d 379, 385 (2001). There are four elements to a prima facie claim for violation of public policy:

> (1) The plaintiffs must prove the existence of a clear [mandate of] public policy (the *clarity* element).
>
> (2) The plaintiffs must prove that discouraging the conduct in which [the employee] engaged would jeopardize the public policy (the *jeopardy* element).
>
> (3) The plaintiffs must prove that the public-policy-linked conduct caused the dismissal (the *causation* element).
>
> (4) The defendant must not be able to offer an overriding justification for the dismissal (the *absence of justification* element).

*Sedlacek v. Hillis*, 145 Wn. 2d 379, 387 (2001).

Defendants' motion for summary judgment focuses on the third element, causation. Dkt. 17 at 16-18. According to Defendants, Plaintiff cannot show that her claimed disability caused her termination. *Id*. In her Response, Plaintiff argues that she "has sufficiently pleaded failure to accommodate and wrongful termination[.]" Dkt. 20 at 17. Defendants' Reply points out that

Plaintiff's Response does not directly oppose dismissal of the WLAD claim under the wrongful discharge theory, therefore, Defendants argue, the secondary tort claim alleged under that same theory should be dismissed. Dkt. 21 at 7.

Defendants are at least partially correct. As to the violation of public policy claim, the Complaint only alleges discrimination under a theory of wrongful discharge, unlike the WLAD claim, which also alleges discrimination under a theory of reasonable accommodation. *Compare* Dkt. 1-1 at ¶¶44, 45; Dkt. 1-1 at ¶46. Because Plaintiff has abandoned the WLAD claim alleged under the wrongful discharge theory, *see §1a above*, this claim should also be dismissed, because it is alleged solely under that one theory. From Plaintiff's argument it appears to assume that the Complaint alleged both theories (which it did not), therefore the claim should be dismissed without prejudice and with leave to amend. The Court does not reach the merits of this claim if it were alleged under a theory of reasonable accommodation.

Defendants' motion should be granted in part as to this claim, which should be dismissed without prejudice. Plaintiff should be given leave to amend by August 14, 2017.

    *b.  Intentional Infliction of Emotional Distress (Outrage)*

The Complaint alleges that Defendants' discriminatory actions were extreme and outrageous and caused Plaintiff to suffer severe emotional distress. Dkt. 1-1 at ¶¶47-49.

Under Washington law, the tort of Outrage requires proof of three elements: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress. *Reid v. Pierce County,* 136 Wn.2d 195, 202 (1998). Whether certain conduct is sufficiently outrageous is ordinarily for the jury, but it "is initially for the court to determine if reasonable minds could differ." *Dicomes v. State,* 113 Wn.2d 612, 630 (1989). The conduct "must be 'so outrageous in character, and so extreme in

degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Grange Ins. Ass'n v. Roberts*, 179 Wn.App. 739, 754 (2013).

Defendants argue that Plaintiff has not made any showing of emotional distress; that Defendants' conduct, even if discriminatory, was not outrageous; and that the outrage claim is duplicative of the WLAD claim and should be dismissed to preclude double recovery. Dkt. 17 at 20.

While acknowledging that double recovery for the same injury is permitted, Plaintiff argues that because she has pleaded discrimination under several theories, she should be permitted to seek alternative remedies based on the same facts. Dkt. 20 at 17. For example, because the WLAD claim for discrimination is alleged under two theories, wrongful termination and failure to accommodate, Plaintiff could recover under the WLAD for one claim and under the Outrage claim for the other. *See id.*

The issue of double recovery may be better resolved by asking a jury to parse out damages for discrete claims at the close of trial, because the issue of double recovery is only ripe where the plaintiff prevails on both claims. *But see Francom v. Costco Wholesale Corp.*, 98 Wn.App. 845, 864-65 (2000). However, the Court need not reach the duplicative damages issue, because the record does not support the claim. First, Plaintiff has not made a showing of severe emotional distress caused by Defendants' conduct. *See generally*, Dkts. 20, 20-1. Second, Plaintiff has not made a showing that Defendants' conduct was extreme or outrageous. Because Plaintiff's briefing uses generalities and legal conclusions when describing Defendants' conduct, it is unclear exactly what underlying conduct Plaintiff believes caused the harm. *See* Dkt. 20 at 17, 18. However, as a sister court commented when dismissing an outrage claim similarly

alleged under the theory that discriminatory conduct was extreme and outrageous, "[i]f falsifying evidence to support termination is not enough in *DiComes*, then termination with a discriminatory or retaliatory motive cannot be enough to support this tort." *Armijo v. Yakima HMA, LLC*, 868 F. Supp. 2d 1129, 1136 (E.D. Wash. 2012). The manner in which Plaintiff was discharged, with deliberations at two public hearings and a *Loudermill* meeting, with formalized, written communications, does not go beyond all bounds of decency. Particularly in a case where there are at least two competing views of the basis for Plaintiff's termination, both supported by the record, this Court cannot find that a trier of fact could find for Plaintiff on this claim.

Defendants' motion should be granted as to this claim, which should be dismissed.

### c.  *Negligent Infliction of Emotional Distress*

A plaintiff may recover for negligent infliction of emotional distress if she proves negligence, that is, duty, breach of the standard of care, proximate cause, and damage, and proves the additional requirement of objective symptomatology. *Strong v. Terrell*, 147 Wn.App. 376, 387 (2008), citing *Kloepfel v. Bokor*, 149 Wn.2d 192, 198 (2003).

Even assuming that there was a showing of the elements for negligence—and Plaintiff has made no attempt to make this showing (*see* Dkt. 20 at 17, 18)—this claim fails for the same reason as the outrage claim. "Emotional distress must be susceptible to medical diagnosis and proved through medical evidence." *Kloepfel*, 149 Wn.2d at 197. The record does not point to emotional medically-diagnosable harm to Plaintiff caused by Defendants' conduct. *See* Dkts. 20, 20-1.

Defendants' motion should be granted as to this claim, which should be dismissed.

### d.  *Breach of Contract*

1    The Complaint alleges that Defendants breached Plaintiff's Employment Agreement.

2    Dkt. 1-1 at ¶51.

3    To succeed on a breach of contract claim, the plaintiff must prove four elements: duty,

4    breach, causation, and damages. *BP W. Coast Prods. LLC v. SKR Inc.,* 989 F.Supp.2d 1109,

5    1121 (W.D.Wash.2013) (citing *Baldwin v. Silver,* 165 Wn.App. 463, 473 (2011). In this case, the

6    parties disagree about whether Defendants breached the Employment Agreement. According to

7    Defendants, the "undisputed evidence" shows that the County satisfied its obligations, because

8    the Employee Agreement allows the County to dismiss with or without cause, and Plaintiff was

9    terminated only after the *Loudermill* hearing. Dkt. 17 at 21. Plaintiff argues that Defendants

10   breached the Employment Agreement by terminating Plaintiff for cause on January 14, 2015, six

11   days prior to her *Loudermill* hearing. Dkt. 20 at 16. Plaintiff points to the January 21, 2015

12   meeting minutes, which note the commissioners' vote to "<u>uphold</u> the decision to terminate

13   Donna McCallum with cause." *Id.* (emphasis added).

14   Summary judgment in favor of Defendants is not warranted, because there is an issue of

15   material fact as to when the County terminated Plaintiff, either on January 14, 2015, or January

16   21, 2015. The Employment Agreement expressly required a *Loudermill* hearing prior to

17   terminating an employee for cause, Dkt. 20-1 at 13, 14, so if the commissioners terminated

18   Plaintiff's employment prior to that hearing, held on January 20, 2015, the County arguably

19   breached the Employment Agreement. Meeting minutes from January 14, 2015 and January 21,

20   2015 are at least ambiguous about the timing of the termination. Meeting minutes from January

21   14, 2015 show that "[a] motion was made . . . to terminate Donna McCallum . . . with cause[.]"

22   *Id.* at 7.  Meeting minutes from January 21, 2015, which followed the *Loudermill* hearing, reflect

23

24

"[a] motion . . . to uphold the decision to terminate Donna McCallum with cause, after consideration of the information provided at the loudermill hearing." *Id*. at 22.

Defendants' motion should be denied as to this claim.

\*\*\*

Therefore, it is HEREBY ORDERED that Defendants Grays Harbor County, Wes Cormier, Frank Gordon, and Vicki Raines' Motion for Summary Judgment (Dkt. 17) is GRANTED IN PART and DENIED IN PART as follows:

- o Washington Law Against Discrimination claim: Denied in part as to reasonable accommodation theory, but granted in part as to wrongful discharge theory, and to that extent the claim is dismissed.
- o Family Medical Leave Act claim: Denied.
- o Americans with Disabilities Act: Denied.
- o Age Discrimination in Employment Act: Denied.
- o Washington Open Public Meeting Act: Granted. This claim is dismissed.
- o Wrongful discharge: Granted. The claim is dismissed without prejudice. Plaintiff is given leave to amend this claim by August 14, 2017.
- o Intentional infliction of emotional distress: Granted. This claim is dismissed.
- o Negligent infliction of emotional distress: Granted. This claim is dismissed.
- o Breach of contract: Denied.

IT IS SO ORDERED.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 7th day of August, 2017.

ROBERT J. BRYAN
United States District Judge